UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

JAMES COX,

        Plaintiff,

v.

PNC BANK, NAT'L ASS'N, *et al.*

        Defendants.

Case No. 2:16-cv-02506-RFB-CWH

**<u>ORDER</u>**

## I. INTRODUCTION

This case is before the Court on Defendant PNC Bank N.A.'s Motion to Dismiss. (ECF No. 8).

## II. BACKGROUND

On October 27, 2016, this case was removed to federal court on the basis of diversity jurisdiction. Plaintiff asserts an unjust enrichment claim against Defendants PNC Bank, N.A., and Clear Recon Corporation. The Court held a hearing on the motion on July 26, 2017.

### A. Alleged Facts

On or about January 22, 2003, John Williams approached James Cox and requested that Cox arrange for the purchase of five residential lots from Stephen L Hawley ("The Lots")**.** Williams did not have sufficient funds to purchase the lots, and requested that Cox help him negotiate/arrange the sales price and financing for the purchase of the lots. Cox was able to arrange for the sale of the lots to Williams for a total purchase price of $345,000.00 ($69,000 per lot)**.** Hawley agreed to sell the lots to Williams with $172,500 to be paid up-front, and the remaining $172,500 to be paid upon the sale of the lots after homes had been constructed on the lots. Cox

arranged for Williams to receive private funding from the David Stoebling Trust for the up-front payment of $172,500.

The sale of the lots from Hawley to Williams occurred on September 19, 2003. Subsequently, at Williams' request, Cox arranged for Williams to receive a construction loan in the approximate amount of $825,000; the construction loan funded on or about May 10, 2004. Proceeds of the loan were used to pay off the $172,500 loan from the David Stoebling Trust, and the loan proceeds were also used to construct homes on the lots. Cox then assisted Williams with selling and arranging financing for the homes, once constructed, on Lots 12 and 15; Cox landscaped those lots as well. Lot 12 sold on April 4, 2005, and Lot 15 sold on February 25, 2005.

In return for Cox's efforts and accomplishments related to the original purchase of the Lots, arranging the financing, and assisting with the re-sale of the homes and landscaping, Williams agreed that Cox would receive Lot 10 free and clear of any and all liens; additionally, it was agreed that Williams Construction would construct a home on Lot 10 for Cox at cost. As part of the agreement, Cox was to live in the home built on Lot 11 until the home on Lot 10 was completed. All of the aforementioned dealings involved Cox, Williams, as well as the other owners of Williams Construction.

On or about July 21, 2005, Williams unexpectedly passed away. On or about December 20, 2005, the other owners decided not to honor the agreements made with Cox. Instead, Williams Jr. and Cox entered into an agreement whereby Cox agreed to take Lot 7 instead of Lot 10, and Williams obtained a construction loan and built a 4,000 square foot home on Lot 7; once completed Cox could either sell the property or keep it at the cost of construction. Cox then arranged for the sale of Lot 10, along with a contract to construct a 3,500 square foot home on the lot. Cox arranged for the buyer to obtain a construction loan.

Williams, Jr. obtained the subject construction loan for Lot 7 from National City Mortgage (now PNC Bank). The loan funded on or about May 10, 2007; however, when Williams Jr. attempted to get a permit to build the home, it was revealed that the building codes had changed and the entire project had to be re-engineered with new plans drafted in order to satisfy the building codes. On or about October 1, 2007, National City Mortgage wrote a letter to Williams Jr.

demanding that construction on Lot 7 commence immediately, or else the loan would be in default, the interest rate would increase to 11.75%, and foreclosure proceedings would commence. Construction then commenced on Lots 7 and 10.

Cox ultimately learned that National City Mortgage had re-appraised the home and Lot 7 in October 2007; National City Mortgage did not disclose to either Williams Jr. or Cox that the appraised value had dropped over $200,000. Once the home on Lot 7 was constructed, Cox installed and completed all the landscaping, installed in excess of 3,000 square feet of exotic hardwood flooring, installed paved driveways and patios, installed rock in the fireplace and kitchen island, sealed and painted the garage floor, and installed granite countertops, amongst other improvements. When the home on Lot 7 was fully constructed in December 2008, the home value had dropped from $998,000 to $280,000. National City Mortgage refused to discuss loan modification options with Williams Jr and began foreclosure proceedings; Williams Jr was forced to file a Chapter 11 bankruptcy.

During the bankruptcy, Cox paid adequate protection payments and it was agreed that the home value was $320,000. Upon successful completion of Williams Jr's Chapter 11 Plan of Reorganization, Cox was to purchase the home on Lot 7. Ultimately, Williams Jr became frustrated with the bankruptcy and, without informing Cox or transferring the title to the home to Cox, converted the bankruptcy filing to a Chapter 7 bankruptcy on October 3, 2014. PNC Bank is the current holder of the Deed of Trust and loan at issue and is currently pursuing a foreclosure sale of the home on Lot 7. Clear Recon is the trustee that is conducting the foreclosure sale. On or about October 8, 2015, Clear Recon and PNC Bank issued a Notice of Trustee's Sale, setting a foreclosure sale date of November 9, 2015.

Cox alleges that he holds an interest in the home built on Lot 7, adverse to PNC Bank's interest, and that his intention is to pay PNC Bank the $320,000, the home value agreed upon during the Chapter 11 bankruptcy, for clear title to the home. Cox alleges that as a result of the foreclosure activity, he has been damaged in an amount in excess of $10,000.

**III. LEGAL STANDARD**

In order to state a claim upon which relief can be granted, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In ruling on a motion to dismiss for failure to state a claim, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

**IV. ANALYSIS**

Defendant PNC Bank seeks to dismiss the sole claim for unjust enrichment.

**A. Unjust Enrichment – Legal Standard**

The elements of an unjust enrichment claim are as follows: 1) plaintiff confers a benefit on the defendant; 2) the defendant appreciates such benefit; and 3) there is "acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." UnionAmerica Mortgage v. McDonald, 97 Nev. 210, 212 (Nev. 1981). A "benefit" includes "services beneficial to or at the request of the other." Topaz Mutual Co. v. Marsh, 108 Nev. 845, 856 (Nev. 1992).

**B. Analysis**

Defendant argues that Plaintiff has asserted no basis for interest in the real property adverse to PNC's mortgage. Plaintiff does not hold legal title to the property and PNC has a mortgage secured by a deed of trust on the property. Plaintiff asserts that based on his descriptions of agreements/contracts with third parties, that he is now entitled to an interest in the real property.

Defendant argues that the unjust enrichment claim fails because Plaintiff has never conferred a benefit onto PNC at PNC's request. The Court agrees.

Plaintiff has alleged that he made improvements to the Property, which benefited the Defendant. However, the improvements were not made at the request of PNC, and the Complaint does not allege that any communications occurred between PNC and Plaintiff at any time. Defendant argues that the alleged benefit was conferred on Williams Jr., Williams Sr., or one of the other parties to the Williams estate, with whom Plaintiff made direct agreements. Plaintiff states that he conferred a benefit on PNC by improvements he made to the property, and that PNC appreciated that benefit in the form of value added to the home. Yet the allegations of the Complaint do not state that the property was in the possession of PNC at the time. The property is owned by Williams, and PNC, in initiating foreclosure proceedings, could at some time possess the property. Therefore, it is unclear what benefit PNC has presently retained from the Plaintiff. PNC has not retained the property, or any money from Plaintiff, and no services were made at the request of PNC. Furthermore, Plaintiff's Complaint does not clarify the circumstances making it inequitable for PNC Bank to "retain the benefit without payment of the value thereof." PNC Bank provided the loan to finance the construction of the property, and was not involved in any of the agreements between Williams and Plaintiff. Therefore, the Court finds that Plaintiff has failed to state an unjust enrichment claim against PNC Bank.

### V. CONCLUSION

For the reasons stated in this opinion,

**IT IS ORDERED** that Defendant's Motion to Dismiss (ECF No. 8) is GRANTED with prejudice.

DATED: October 5, 2017.

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**